**Eric VAN GELDER; and Eric Van Gelder on his own behalf and on behalf of all other shareholders of the Rookery, Inc., Plaintiff,**

v.

**Lamar S. TAYLOR, Jr.; James B. Kee; and the Rookery, Inc., a Georgia corporation, Defendants.**

No. 85 C 5295.

United States District Court, N.D. Illinois, E.D.

Nov. 13, 1985.

Michael Hawkins, Chicago, Ill., for plaintiff.

Terence J. Moran, Schiff, Hardin & Waite, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Before the Court is defendants' motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this case to the United States District Court for the Middle District of Georgia pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). For the reasons stated herein, defendants' motion to dismiss is denied and the motion to transfer is granted.

## I. FACTS

Plaintiff Eric Van Gelder filed a two-count complaint against defendants. Count 1 has been brought by Van Gelder individually and purports to state a claim of fraud against the individual defendants, Taylor and Kee. Count 1 alleges that the individual defendants fraudulently induced plaintiff to invest in defendant corporation, The Rookery, Inc. Count 2 has been brought by Van Gelder as a shareholder's derivative action on behalf of The Rookery, Inc., a Georgia corporation, and purports to state a claim for breach of fiduciary duty to The Rookery, Inc. and to Van Gelder by defendants Taylor and Kee. Count 2 alleges that Taylor and Kee wrongfully and fraudulently used their fiduciary positions to utilize corporate assets and facilities for their own personal gain to the detriment of both defendant corporation and plaintiff, as a minority shareholder of the corporation.

For jurisdictional purposes, the citizenship of the parties must be established. Plaintiff is a citizen of the State of Illinois, defendants Taylor and Kee are both citizens of the State of Georgia, and defendant The Rookery, Inc. is a corporation duly organized and existing under the law of the State of Georgia with its principal place of business in Macon, Georgia.

Plaintiff's claims arise out of a business venture entered into by Van Gelder, Taylor and Kee. Taylor and Kee allegedly solicited Van Gelder to invest $30,000 in The Rookery, Inc. in return for one third of the stock in said corporation. Taylor and Kee were each to own one third of the same stock to constitute the remaining stockholders. It is alleged that Taylor and Kee also solicited Van Gelder to invest for the group $15,000 as a down payment for the purchase of the Georgia building in which The Rookery, Inc. conducts its retail business and to invest $7,500 for attorneys' fees. Van Gelder argues that he was to be reimbursed by the two individual defendants for their pro rata share of these latter two expenses. The control of The Rookery, Inc. is vested in Taylor and Kee through their control of the shareholder's meetings and the Board of Director's meetings.

The remedies plaintiff seeks in Count 1 are: (1) a rescission of the agreement between the parties relative to his purchase of the one-third interest in The Rookery, Inc.; (2) a judgment for Van Gelder against each of the individual defendants for the amounts of money loaned and advanced to them, and; (3) punitive damages. The remedies plaintiff seeks in Count 2 are: (1) an issuance of a summons to each individual defendant requiring them to appear in this Court to answer the complaint; (2) an appointment of a receiver to seize all property

of The Rookery, Inc. and all shares of The Rookery, Inc. standing in the names of the individual defendants, pursuant to Rule 66 of the Federal Rules of Civil Procedure, to hold and preserve the shares until a final determination of the cause is made; and (3) an accounting for all sums of money, profits, and gains which Taylor and Kee have made as a result of the alleged conspiracy against Van Gelder.

## II. DISCUSSION

■ In this case, federal subject matter jurisdiction is based solely on diversity of citizenship. In diversity cases, a federal district court has jurisdiction over the persons of the defendants only if a court of the state in which the federal court is sitting would have personal jurisdiction. *Snyder v. Smith*, 736 F.2d 409, 415 (7th Cir.1984); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1212 (7th Cir. 1984); *Lakeside Bridge & Steel v. Mountain State Construction Co.*, 597 F.2d 596, 598 (7th Cir.1979); *cert. denied*, 445 U.S. 907–08, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). As such, Illinois law will govern the determination as to whether this Court has personal jurisdiction over the defendants. *Welles Product Corp. v. Plad Equipment Co., Ltd.*, 563 F.Supp. 446, 448 (N.D.Ill.1983).

■ Under Illinois law, foreign defendants are subject to the jurisdiction of state and federal courts in Illinois only if they have committed any of the acts specified in the Illinois Long Arm Statute. Ill. Rev.Stat. ch. 110, § 2–209(a). *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981). Commission of one or more of those specified acts will support jurisdiction over the persons of the defendants only as to causes of action arising from the commission of those acts. Ill.Rev.Stat. ch. 110, § 2–209(c). For specification as to the acts which submit a person to the jurisdiction of the state, the Illinois Long Arm Statute ch. 110, § 2–209 provides in pertinent part:

Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

A plaintiff bears the burden of proving that a court has personal jurisdiction over defendants, i.e., that defendants have committed acts that fall within the Illinois Long Arm Statute. *Kutner v. DeMassa*, 96 Ill.App.3d 243, 247, 51 Ill.Dec. 723, 421 N.E.2d 231 (1st Dist.1981).

■ Proper venue under Illinois law lies "in the county in which the transaction or some part thereof occurred out of which the cause of action arose." Ill.Rev.Stat. ch. 110, § 2–101(2).

### A. *Count 1*

Count 1 is an action for fraud. Subject matter jurisdiction is conferred upon this Court through diversity of citizenship: plaintiff Van Gelder is a citizen of the State of Illinois whereas all defendants are citizens of the State of Georgia.

The existence of personal jurisdiction over defendants is, however, questionable. Plaintiff argues that the Illinois Long Arm Statute applies insofar as the business transactions and the tortious act of fraud occurred in Illinois. In support of this argument, plaintiff alleges that the negotiations inducing plaintiff to invest in The Rookery, Inc. were made in Illinois. An affidavit has been submitted by plaintiff in support of this allegation. Conversely, defendants allege that the Illinois Long Arm Statute is inapplicable insofar as all negotiations and transactions were made in Georgia. Therefore, defendants conclude that any purported tortious act would have necessarily occurred in Georgia. Three affidavits have been submitted by defendants in support of these allegations.

■ Although personal jurisdiction is questionable, this Court need not determine the issue. This Court finds that transfer under 28 U.S.C. § 1404(a) is proper. When transferring an action under § 1404(a), the transferor court is not first required to establish personal jurisdiction over the movant. *Coats Co., Inc. v. Vulcan Equipment Co., Inc.*, 459 F.Supp. 654, 659 (N.D. Ill.1978).

■ § 1404(a), governing transfer for the convenience of parties and witnesses, is designed to prevent waste of time, energy, and money, as well as to protect litigants, witnesses, and the public against inconvenience and expense. *Cunningham v. Cunningham*, 477 F.Supp. 632 (N.D.Ill.1979). § 1404(a) provides in pertinent part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought.

■ Transfer, rather than dismissal, is the proper remedy if the convenience of parties and witnesses and the interest of justice describe a more appropriate forum elsewhere. *Stinnett v. Third National Bank of Hampden County*, 443 F.Supp. 1014, 1017 (D.Minn.1978).

■ In order to meet the requirements of § 1404(a), the movant must establish (1) that venue is proper in the transferor district; (2) that the transferor court has the power to transfer the case (the transferee district is one in which the case could have been brought); and (3) that the transfer is for the convenience of parties and witnesses in the interest of justice. *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1050 (N.D.Ill.1982). The first requirement is met since plaintiff is a citizen of Illinois. Likewise, the second requirement is met under 28 U.S.C. § 1391 since all defendants reside in the Middle District of Georgia.

■ The question of transfer thus turns upon the third requirement. To support a motion to transfer, the movant must show a "clear balance of inconvenience" in the transferor district over the transferee district. *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1050 (N.D.Ill. 1982); *see also SEC v. First National Finance Corp.*, 392 F.Supp. 239, 240 (N.D.Ill. 1975). In determining whether the movant has met this burden, the Court must consider the factors specifically enumerated in § 1404(a), i.e., the convenience of parties, witnesses, and the interest of justice, while simultaneously giving weight to the plaintiff's choice of forum.

### 1. *Plaintiff's Choice of Forum*

■ Under the common law doctrine of forum non conveniens, plaintiff's choice of forum was an overriding factor entitled to considerable weight in determining whether to transfer a case. However, the significance of this choice has diminished since the enactment of § 1404(a). *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955); *Hotel Constructors, supra*, 543 F.Supp. at 1050. Moreover, plaintiff's choice of forum has diminished value where the forum chosen lacks any significant contact to the underlying cause of action. *Environmental Services, Inc. v. Bell Lumber and Pole Co.*, 607 F.Supp. 851 (N.D.Ill.1984); *Cunningham v. Cunningham*, 477 F.Supp. 632, 634 (N.D.Ill.1979). In such a case, plaintiff's choice of forum becomes but one of many factors to be considered by the Court in determining convenience in a § 1404(a) transfer. *General Signal Corp. v. Western Electric Co.*, 362 F.Supp. 878, 880 (N.D.Ill.1973). Where the forum is not conclusively the place where the cause of action arose, a plaintiff's choice of forum is given equal consideration along with other factors in determining whether to grant a motion for change of venue. *Hotel Constructors, supra*, 543 F.Supp. at 1051; *Environmental Services, Inc., supra*, 607 F.Supp. at 853.

In the present case, it is questionable whether this forum has significant contacts to the underlying cause of action. Plaintiff argues that the transactions between the parties occurred in Illinois and that, there-

fore, the cause of action for fraud and for the shareholders derivative suit lies in this forum. Conversely, defendants contend that all business transactions occurred in Georgia and that any possible cause of action exists there.

Given that plaintiff has submitted a rather conclusory affidavit stating that all business negotiations occurred in Illinois with no supportive details, and given that defendants submitted three affidavits enumerating specific details as to numerous negotiations all occurring in Georgia, the Court believes that it is more likely that the contract was negotiated in Georgia. In addition, it seems undisputed that Georgia is the situs of the contract's performance. As such, Illinois is not conclusively the place where the cause of action arose. Plaintiff's choice of forum therefore becomes but one of many factors to consider in determining whether to grant a motion to transfer under § 1404(a).

### 2. *Convenience of the Parties and Witnesses*

■■■ The convenience and fairness of a transfer under 1404(a) are measured according to the private interests of the litigants and the public interests of the court. Private interest factors include the location of witnesses and evidence, the power of courts to compel attendance of witnesses, and the relative abilities of parties to bear the financial costs of trial. Public interest factors in a diversity case include familiarity with the state law to be applied and a desirability of having local controversies decided at home. *Mutual of Omaha Ins. Co. v. Dolby*, 531 F.Supp. 511 (E.D.Pa. 1982). In the present case, private and public interests would be best served by transferring this case to Georgia.

The private interests of the litigants indicate that Georgia is a more convenient forum to bring this suit. To begin with, it appears that potential witnesses and evidence are located in Georgia. For example, an attorney was present during the business negotiations in Georgia and drew up the contract between the parties. Since the

attorney is a citizen of the State of Georgia, this Court lacks the power to compel his attendance as a witness. Moreover, all corporate records for The Rookery, Inc. would be located in Georgia, the location of the corporation's principal place of business, management decisions, and board of directors' meetings. These records are necessary for the ultimate determinations as to whether plaintiff was fraudulently induced to invest in a one-third share of the corporation and whether the individual defendants breached their fiduciary duty to the corporation and to plaintiff as a minority shareholder. Given that Georgia is the place of the contract's performance, the individual defendants alleged use of corporate assets for personal gain would have necessarily occurred in Georgia. And finally, affidavits submitted by the defendants state that plaintiff traveled often to Georgia to conduct the negotiations involved. Plaintiff's prior contacts with Georgia suggest that requiring him to return there would not be unduly burdensome.

The public interests of the court also indicate that Georgia is a more convenient forum in which to bring this action. For numerous reasons, the controversy appears to be local to Georgia: (1) a Georgia corporation is the subject of the dispute at hand; (2) it appears most likely that the negotiations resulting in the formation of this contract occurred in Georgia; and (3) Georgia is the place of the contract's performance. One factor in determining whether to transfer a case under § 1404(a) is the desirability of having local controversies tried at home. *Mutual of Omaha Ins. Co. v. Dolby*, 531 F.Supp. 511 (E.D.Pa.1982); *Prather v. Raymond Const. Co. Inc.*, 570 F.Supp. 278 (M.D.Ga.1983). The Middle District of Georgia is more familiar with the Georgia law, which will be applicable, as discussed *infra*.

### 3. *Interest of Justice*

■■■ The final factor to be considered under § 1404(a) is whether it would be in the interest of justice to transfer the case

to a more convenient forum. In ruling on a request for change of venue on the ground of interest of justice, a court is required to consider accessibility to sources of proof, availability of compulsory process for the attendance of unwilling witnesses, public interests and policy as well as private interests and policy as well as private interests of the litigants, and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Jacobs v. Lancaster*, 526 F.Supp. 767 (W.D.Okl. 1981); *ROC, Inc. v. Progress Drillers, Inc.*, 481 F.Supp. 147 (W.D.Okl.1979); *Bartolacci v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints*, 476 F.Supp. 381 (E.D.Pa.1979). These factors have been considered above and all point to Georgia as a more appropriate forum for litigation.

■ Under the interest of justice standard governing discretionary transfers of civil actions, appropriate weight is to be given to the desirability of having a federal judge of the proposed transferee district interpret a contract made in the state in which the transferee court sits, especially where the contract specifies that it is to be interpreted in accordance with such state's laws. *Vaughn v. American Basketball Ass'n.*, 419 F.Supp. 1274 (S.D.N.Y.1976). Under Illinois conflict of law principles, the law of the state of the contract's making governs if there is no clear place of performance for the contract. *Environmental Services, Inc. v. Bell Lumber and Pole Co.*, 607 F.Supp. 851, 855 (N.D.Ill.1984); *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1052 (N.D.Ill. 1982); *P.S. & E., Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125, 127 (7th Cir.1972). Georgia is the place of the contract's performance, and the evidence submitted indicates that Georgia is the state of the contract's making. Moreover, The Rookery, Inc. is duly incorporated under Georgia laws. Hence, Georgia law should be applicable, and it would be in the interest of justice to have a Georgia judge decide the case.

The motion to transfer Count 1 to the Middle District of Georgia is granted under 28 U.S.C. § 1404(a).

### B. *Count 2*

■ Count 2 is a shareholder's derivative action. Subject matter jurisdiction is conferred upon the Court through diversity of citizenship. Plaintiff Van Gelder is the real party in interest aligned against the two individual defendants and the defendant corporation. As a general rule, the plaintiff stockholder in a stockholder's derivative suit is "at best the nominal plaintiff." *Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir.1983) (citing *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970)). The corporation is the real party in interest, regardless of the fact that the corporate management has failed to pursue the action. *Liddy, supra*, 707 F.2d at 1224; *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). However, the corporation is initially named as a defendant to insure the presence of the corporation as an indispensable party. Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests. *Liddy, supra*, 707 F.2d at 1224; *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). The corporation should be realigned as a plaintiff in a stockholder's derivative suit when it is the real party in interest which stands to benefit from a successful suit. *Liddy, supra*, 707 F.2d at 1224; *see Schmidt v. Esquire, Inc.*, 210 F.2d 908 (7th Cir.), *cert. denied*, 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954).

An exception to this general rule exists. The corporation properly remains a defendant in a stockholder's derivative action whenever the corporate management is "antagonistic" to the plaintiff shareholder. The test of "antagonism" between the corporation and the stockholder is found in *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957).

There will be, of course, antagonism between the stockholder and the manage-

ment where the dominant officers and directors are guilty of fraud or misdeeds. But wrongdoing in that sense is not the sole measure of antagonism. There will be antagonism whenever the management is aligned against the stockholder and defends a course of conduct which he attacks.

*See also, Liddy v. Urbanek,* 707 F.2d 1222, 1224 (11th Cir.1983); *Walden v. Elrod,* 72 F.R.D. 5, 15 (W.D.Okla.1976). It would appear that this case falls within the exception provided. Antagonism exists between the corporate management and the plaintiff shareholder. As such, The Rookery, Inc. was properly named a defendant in the action, and diversity exists to establish subject matter jurisdiction.

■ Venue, however, is improper in this Court. 28 U.S.C. § 1401 provides that any civil action by a stockholder on behalf of his corporation may be prosecuted in any judicial district where the corporation might have sued the same defendants. In other words, in a shareholder's derivative action, a plaintiff stockholder can sue only in a district in which the corporation for whose benefit the action was brought might sue the objecting defendants.

■ Where the corporation can sue for venue purposes is governed by 28 U.S.C. § 1391. Where jurisdiction is founded only on diversity of citizenship, venue is proper in a judicial district where all plaintiffs or all defendants reside or where the claim arose. As such, venue in this Court is improper insofar as not one of the three requirements of § 1391 is satisfied within this district. Under § 1401, the beneficiary corporation becomes the plaintiff for venue purposes in a shareholder's derivative action. Thus, the Middle District of Georgia is the district in which venue is proper in the present case. It is in Georgia that all plaintiffs and all defendants reside and in Georgia that the claim arose.

■ It must be noted that there is a clear line between the party who is the plaintiff for jurisdictional purposes and the party who is the plaintiff for venue purposes. The words "may be brought in any district," as used by § 1401 providing that a shareholder's derivative suit may be brought in any district in which suit against the defendants might have been brought by the beneficiary corporation, have a venue, rather than a jurisdictional, connotation. *Saltzman v. Birrell,* 78 F.Supp. 778, 784 (S.D.N.Y.1948); *Braunstein v. Devine,* 136 F.Supp. 156 (D.Mass. 1955); *Industrial Waxes, Inc. v. International Rys. of Central America,* 193 F.Supp. 783 (S.D.N.Y.1961).

■ In a shareholder's derivative action, where diversity of citizenship exists between the stockholder and defendants, diversity need not also exist between the beneficiary corporation and defendants. *Saltzman,* 78 F.Supp. at 784. § 1401 presupposes the existence of federal jurisdiction, and nothing in the statute suggests the need of double diversity. *Id.* "Such a construction would not execute the policy of the statute which is designed to facilitate the bringing of stockholder's suits." *Id.* at 784. Consequently, the beneficiary corporation may be viewed as plaintiff for venue purposes in a shareholder's derivative suit but not necessarily as plaintiff for jurisdictional purposes. As such, there is no conflict in viewing Van Gelder as plaintiff to establish jurisdiction and The Rookery, Inc. as plaintiff to establish venue.

Given that venue is improper in this Court, Count 2 must be transferred to the Middle District of Georgia under 28 U.S.C. § 1406. § 1406 governs the cure or waiver of defects in laying venue. The section provides that a district court of a district in which is filed a case laying venue in the wrong district or division shall dismiss, or if it be in the interest of justice, transfer the case to a district or division in which it could have been brought.

■ Normally, if venue is not proper in the district court where the action is initi-

ated, transfer to a proper district or division is preferred over dismissal. *Phillip Gall and Son v. Garcia Corp.*, 340 F.Supp. 1255 (E.D.Ky.1972). Transfer is generally considered to be more "in the interest of justice" than dismissal for improper venue and, therefore, any doubts should be resolved in favor of preserving the action, particularly where it appears that venue is proper in the transferee court. *Nation v. U.S. Government*, 512 F.Supp. 121 (S.D. Ohio 1981); *De La Fuente v. I.C.C.*, 451 F.Supp. 867 (N.D.Ill.1978). It has been established that venue is proper in the transferee court for Count 2. Moreover, the interest of justice would be best served by transfer rather than dismissal. Therefore, the motion to transfer Count 2 to the Middle District of Georgia is granted under §§ 1401 and 1406.

■ Again, this Court need not establish personal jurisdiction over the parties. A district court has the authority to transfer an action to another court if venue is improper in the transferor court even though it lacks personal jurisdiction over the defendants. *Rixner v. White*, 417 F.Supp. 995 (D.N.D.1976).

### III. CONCLUSION

For the reasons stated above, defendant's motion to transfer this action to the United States District Court for the Middle District of Georgia is granted.

IT IS SO ORDERED.